IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CARL RAY VICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO. 1:22-cv-355-TFM-M |
| | ) | |
| LIBERTY MUTUAL PERSONAL INSURANCE, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the Defendant's Motion for Summary Judgment (Doc. 21, filed 6/30/23). Plaintiff timely submitted his response in opposition and Defendant timely replied. *See* Docs. 23, 24. Having considered the motion, response, reply, the evidentiary submissions in support of the motions, and the relevant law, the Court entered a summary order granting the motion and indicated a written opinion would follow. This is that opinion.

**I.     PARTIES AND JURISDICTION**

Plaintiff Carl Ray Vick ("Plaintiff" or "Vick") is a citizen of Baldwin County, Alabama. Liberty Mutual Personal Insurance ("Defendant" or "Liberty") is a corporation organized and existing under the law of the State of Massachusetts with its principal place of business in Boston, Massachusetts – therefore is a citizen of Massachusetts. The amount in controversy exceeds $75,000, exclusive of interest and costs. Accordingly, this Court has Subject Matter Jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).

The parties do not contest personal jurisdiction or venue and the Court finds sufficient support exists for both.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Prior to April 4, 2022, Plaintiff had his vehicular insurance coverage with State Farm Insurance and his daughter's use of his vehicles was covered under his policy with State Farm. *See* Doc. 1-1, Complaint. Some time prior to March 27, 2022, Plaintiff received a flyer in the mail from TruStage Insurance Agency advertising potential savings on car insurance from Liberty Mutual Insurance for members of Keesler Federal Credit Union ("the Flyer"). *See* Doc. 20 at 5 ¶ 1-3; *see also* Doc. 1-1 at 7.[1] Plaintiff alleges that when he contacted the Liberty representative that they represented to Plaintiff they could provide identical vehicle insurance at a lower cost. Plaintiff relied upon that representation, which he says now was false, and accepted the quote which began his insurance coverage with Liberty on April 4, 2022. Doc. 1-1 at 8; *see also* Doc. 21 at 9. The vehicle owned by the Plaintiff was involved in a wreck on April 29, 2022 when he permitted his then-seventeen-year-old daughter to drive the vehicle. *Id*. at 9; *see also* Doc. 23 at 8.

Plaintiff believed that his daughter would be covered under the Liberty policy as he indicated that she was previously covered under his State Farm policy. At the time of policy inception with Liberty Plaintiff's daughter lived with him, had resided in the household for longer than 90 days, was over the age of sixteen, and had been a licensed driver since September 9, 2021. *See* Doc. 21 at 9. The vehicle owned by the Plaintiff was involved in a wreck on April 29, 2022, when he permitted his then-seventeen-year-old daughter to drive the vehicle. *Id.*; *see also* Doc. 23 at 8. On the date of the accident, Plaintiff's daughter reported the accident to Liberty. The cost to repair the vehicle was more than $3,926.22. On April 29, 2022, Liberty denied the claim citing as

---

[1] To the extent page numbers are in conflict, for the purposes of this opinion, the Court utilizes the PDF page number as opposed to the page number on the bottom of the document.

grounds that Plaintiff's daughter was not a covered driver.

In the Circuit Court of Baldwin County, Alabama, Plaintiff filed his complaint for fraud and claimed compensatory and punitive damages in excess of $1,000,000.00. *See* Doc. 1-1 generally. There is some discrepancy in the attachments as to whether the complaint was filed on July 4, 2022 or August 9, 2022. *Compare id*. at 6-10 *with id*. at 21-24. However, it would appear from the state court record that service was effectuated on the Defendant on August 12, 2022. *Id*. at 28-30.

On September 9, 2022, Defendant timely removed the action to federal court alleging diversity jurisdiction. *See* Doc. 1. Diversity of citizenship was not in question and the complaint included a specific amount for claimed damages well in excess of the jurisdictional threshold.

After discovery, Defendant filed its motion for summary judgment and evidentiary support. *See* Docs. 20, 21. Defendant argues that it is due summary judgment because Plaintiff's claim for fraud fails as he could not have reasonably relied upon the alleged misrepresentations by the agent because both the Application for insurance and written policy provided the clear terms including information about covered drivers. Plaintiff signed for both documents. Defendant also argues that to the extent Plaintiff asserts a breach of contract claim, it also fails because it unambiguously excludes coverage.

Plaintiff timely filed his response in opposition to the summary judgment motion. *See* Doc. 23. In his response, Plaintiff denies having received the application and policy because they were only sent electronically. Further, Plaintiff does state he is "suing for fraud" and does not otherwise address any breach of contract type claim. *Id*. at 3. Plaintiff asserts he was the victim of a "highly skilled bait and switch" marketing tactic and alleges two wrongs: (1) that he would receive identical insurance that he had been receiving from State Farm and (2) that the identical insurance

would cost less than what he paid to State Farm. *Id*. He also attaches an affidavit to his response in opposition. *See* Doc. 23-1 which includes an email of a 10/5/22 email from the office manager at the State Farm office that previously held his policy. *Id*. at 7.

Defendant timely filed its reply on the motion for summary judgment. *See* Doc. 24. Defendant argues the self-serving affidavit contradicts all the evidence and cannot be used to create an issue of material fact where one does not otherwise exist when considering all reliable evidence. While not using the specific term, it is clear Defendant argues that it is a sham affidavit. Defendant further reiterates that the Application and Policy made it clear what drivers would (and would not) be covered. Further, the policy also made it clear that no promises were made about the premium amount that would apply during the policy erm.

Finding the motion ripe for adjudication with no need for oral argument, on October 19, 2023, the Court issued a written order summarizing the ruling on motion indicating a written opinion would follow. Doc. 26. This is that opinion.

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "[T]he substantive law will identify which facts are material." *Id*. at 248, 106 S. Ct. at 2510. At the summary judgment stage, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id*. at 249, 106 S. Ct. at 2511. The "evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in [her] favor." *Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993)). For factual issues to be considered genuine, they must have a real basis in the record. *Id.*

The party asking for summary judgment bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23, 106 S. Ct. at 2252. A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and

admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal quotations omitted) (citing *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553). The court must view facts and draw all reasonable inferences in favor of the non-moving party. *Moore v. Reese*, 637 F.3d 1220, 1231 (11th Cir. 2011) (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)). However, to avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citations omitted). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likely insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990).

## IV.   DISCUSSION AND ANALYSIS

The Court begins by noting that neither the Complaint nor the response to the motion for summary judgment are models of clarity. In fact, at times, it is not entirely clear what legal arguments Plaintiff makes, but instead at times comes across as rambling and incoherent. The complaint it entitled "Complaint for Fraud" but does not include separate counts and instead is similar to a shotgun pleading. That said, no party raised an argument about a shotgun pleading, so the Court will muddle through based upon what has been provided.

**A.   Fraud**

Under Alabama law, "[t]he elements of fraud are: (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a

proximate consequence." *Brushwitz v. Ezell*, 757 So. 2d 423, 429 (Ala. 2000) (citing *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 422 (Ala. 1997); *see also McCutchen Co. v. Media Gen., Inc.*, 988 So. 2d 998, 1001 (Ala. 2008) (quoting same elements). Importantly, the Alabama Supreme Court has repeatedly emphasized the "reasonable-reliance principle." *AmerUs Life Ins. Co. v. Smith*, 5 So.3d 1200, 1207 (Ala. 2008) (citing *Torres v. State Farm & Cas. Co.*, 438 So. 2d 757, 758-59 (Ala. 1983)).

> Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover.

*Id*. (quoting *Torres*, 438 So. 3d at 758-59). The Alabama Supreme Court further discussed this in the context of insurance by emphasizing a "reasonable" reliance. *Id*. (citing *Foremost Ins. Co. v. Parham*, 693 So. 2d 409 (Ala. 1997)). In Foremost, the Alabama Supreme Court stated:

> [W]e conclude that the "justifiable reliance" standard adopted in *Hickox [v. Stover*, 551 So. 2d 259 (Ala. 1989)], which eliminated the general duty on the part of a person to read the documents received in connection with a particular transaction (consumer or commercial), should be replaced with the "reasonable reliance" standard most closely associated with *Torres v. State Farm Fire & Casualty Co.*, 438 So. 2d 757 (Ala. 1983). The "reasonable reliance" standard is, in our view, a more practicable standard that will allow the fact-finder greater flexibility in determining the issue of reliance based on all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties. In addition, a return to the "reasonable reliance" standard will once again provide a mechanism … whereby the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms.

*Foremost*, 693 So. 2d at 421; *see also AmerUs*, 5 So. 3d at 1207-08 (quoting *Foremost*). "Therefore, in order to satisfy the reliance element of their fraud claim, the insureds must show

not only that they relied on [the] alleged misrepresentation, but also that their reliance was *reasonable* in light of the facts surrounding the transaction in question." *AmerUs*, 5 So. 3d at 1208 (emphasis in original). Consequently, the duty imposes on a plaintiff a "general duty to read the documents received in connection with a particular transaction together with a duty to inquire and investigate." *AmerUs*, 5 So. 3d at 1208 (citation and internal modifications omitted). "Fraud is deemed to have been discovered when the person either actually discovered, or when the person *ought to or should have* discovered, facts which would provoke inquiry by a person of ordinary prudence, and, by simple investigation of the facts, the fraud would have been discovered." *Id*. (quoting *Gonzales v. U-J Chevrolet Co.*, 451 So. 2d 244, 247 (Ala. 1984)).

More recently, the Alabama Supreme Court reiterated that a plaintiff cannot rely upon an agent's misrepresentations when an insurance contract clearly states the actual terms of the contract. *Alfa Life Ins. Corp. v. Reese*, 185 So. 3d 1091, 1102-03 (Ala. 2015). Specifically, the Alabama Supreme Court quoted itself:

> In light of the language of the documents surrounding the insureds' purchase of the life-insurance policies at issue in this case and the conflict between the agent's alleged misrepresentations and the documents presented to the insured, it cannot be said that the insured reasonably relied on the agent's representations. As this Court stated in *Torres v. State Farm Fire & Cas. Co.*, 438 So. 2d 757 (Ala. 1983): "The right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests." 438 So. 2d at 759. The insureds here took no precautions to safeguard their interests. If nothing else, the language in the policies should have provoked inquiry or a simple investigation of the facts by the insured. Instead, based upon the record before us, we must conclude that the appellant "blindly trusted" the agent and "closed his eyes where ordinary diligence required him to see." *Munroe v. Pritchett*, 16 Ala. 785, 789 (1849). We conclude that no reasonable person could read the policies and not be put on inquiry as to the existence of inconsistencies, thereby making reliance on the agent's representations unreasonable as a matter of law. Because the insureds failed to present substantial evidence indicating that the insured's reliance on the agent's representations was reasonable, the defendant is entitled to a judgment as a matter of law."

*Id*. (quoting *Alfa Life Ins. Corp. v. Colza*, 159 So. 3d 1240, 1242-46 (Ala. 2014)) (internal

modifications omitted).

Here Plaintiff claims that the agent made certain representations and then later claims he never received the documents which contradicted those representations. Therefore, he seems to intimate his claims implicate a fraud by suppression claim. "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Ala. Code § 6-5-102. The elements of a fraudulent suppression claim are: "(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury." *Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.*, 932 So. 2d 883, 891 (Ala. 2005) (quoting *Lambert v. Mail Handlers Benefit Plan*, 682 So. 2d 61, 63 (Ala. 1996)). "The question whether a party had a duty to disclose is a question of law to be determined by the trial court." *Freightliner*, 932 So. 2d at 891 (quotations omitted).

Yet, despite Plaintiff's attempt to argue that he did not receive the documents, the undisputed evidence establishes at a minimum he clearly received the Application because he signed it on March 27, 2022. *See* Doc. 20-3. The evidence also shows that he was sent a copy of the Policy the same day. *Id.* at ¶ 15. The Application itself required Plaintiff to acknowledge a represent the following:

> I acknowledge that all licensed family members and other uninsured licensed individuals residing in my household are listed or excluded on this application. This includes all licensed drivers who are members of my household even if temporarily away from home and all guests staying in my household for more than 90 days. I understand that Collision Coverage may not be provided if my covered auto is being operated by an unlisted driver at the time of loss.

Doc. 20-3, Ex. A, PageID 156. Further, the Policy Declarations Page shows that Plaintiff was the only listed driver, but that he could add additional drivers by contacting Liberty. Doc. 20-3, Ex.

A. (Name of Insured), PageID: 145; *Id*. at Ex. D, PageID: 166) ("To ensure proper coverage, please contact us to add drivers not listed above."). Additionally, the Policy clearly notes that Liberty states "[W]e will not pay for damage resulting from a 'collision' involving 'your covered auto' . . . if at the time of the accident 'your covered auto' was operated by a driver residing in your household longer than 90 days and <u>not</u> listed on your policy." Doc. 20-3, Ex. D, Amendatory Endorsement, PageID: 196.

Though Plaintiff claims he did not receive the policy at issue, what is 100 percent clear is that he received and signed the Application which also makes it clear about covered drivers. Plaintiff cannot bury his head in the sand or try to create an issue of fact through an affidavit that attempts to obfuscate his own obligation to read and review the Application and Policy contract prior to execution.  What is clear from the record is that even if the Liberty agent made any representations, Plaintiff made no attempt to exercise any ordinary diligence.

This case is virtually identical to many presented in Alabama courts that have been routinely rejected.  Much like the situations presented in *Alfa Life Ins. Corp. v. Reese* and *AmerUs Life Ins. Co. v. Smith,* at best, it would appear that Plaintiff blindly relied upon supposed misrepresentations by the Liberty agents and made no attempt to read or review the Application or make any attempt to review the Policy in question (whether or not received).  At worst, he blatantly disregarded the obvious written warnings.  Either way, Plaintiff had his own obligation to review the Policy to which he was committing.  The Application made it clear that his daughter, who resided with him, would not be included and the Policy reiterates that point.  As such, Plaintiff's fraud claim (whether by misrepresentation or suppression) fails as a matter of law and summary judgment is due to be granted.

B.     **Breach of Contract**

It would appear from the response to summary judgment that Plaintiff either never intended to assert a breach of contract claim or if he did, abandoned it by failing to address it. Regardless, since it was raised in the motion for summary judgment, the Court will address it in brief here to show that a breach of contract claim also fails.

In a diversity action, Alabama's substantive law governs the interpretation of the contract at issue. *Employers Mut. Cas. Co. v. Mallard*, 309 F.3d 1305, 1307 (11th Cir. 2002) (Citations omitted); *see also SCI Liquidating Corp. v. Hartford Fire Ins.*, 181 F.3d 1210, 1214 (11th Cir. 1999) (applying Georgia law to contract interpretation in a diversity case).

Under Alabama law, the core principle of contract interpretation is so "practical" and "well known as to require no citation of precedent" *Stacey v. Saunders*, 437 So. 2d 1230, 1234 (Ala. 1983). Specifically, that "[a] written agreement is unambiguous and will be enforced (if otherwise enforceable) where the intent of the parties can be fairly and reasonably gleaned from the four corners of the document." *Id*. (*quoting Schmidt v. Ladner Construction Co., Inc.*, 370 So. 2d 970 (Ala. 1979)). "[T]he intent of the contracting parties is discerned from the whole of the contract." *Homes of Legend, Inc. v. McCollough*, 776 So.2d 741, 746 (Ala. 2000) (citing *Loerch v. Nat'l Bank of Commerce of Birmingham*, 624 So. 2d 552, 553 (Ala. 1993)). Unless there is indication the terms are used in a special or technical sense, they will be given their "ordinary, plain, and natural meaning." *Id*. If the terms are unambiguous, then the court will enforce the contract as written. *Id*. If the terms are ambiguous (susceptible of more than one reasonable meaning), then the court must use established rules of contract construction. *Id*. (citations omitted). "Last, if all other rules of contract construction fail to resolve the ambiguity, then, under the rule of contra proferentem, any ambiguity must be construed against the drafter of the contract." *Id*. (citation

omitted).

"Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." *Pritchett v. State Farm Mutual Automobile Ins. Co.*, 834 So. 2d 785,791 (Ala. 2002).

As discussed in the prior section on fraud, both the Application and the Policy plainly stated that Liberty will not pay for damage resulting from a collision if the vehicle is being operated by an unlisted driver – i.e., a driver residing in your household longer than 90 days and not listed on the policy. There is nothing ambiguous about these terms. Plaintiff's daughter clearly resided in his household more than 90 days, and she was not listed on the policy at issue. Regardless of his supposed "belief" the Court cannot disregard the clear terms of the contract at issue. Therefore, there can be no breach of contract and Defendant is entitled to summary judgment as to any breach of contract claim.

## V. CONCLUSION

Based on the foregoing discussion and analysis, Defendant's Motion for Summary Judgment (Doc. 21) is **GRANTED**. A separate judgment will issue pursuant to Fed. R. Civ. P. 58.

**DONE** and **ORDERED** this the 17th day of November 2023.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE